Good morning, Your Honors. My name is Tara Hovland. On behalf of Mr. McNeely, I would like to reserve five minutes for rebuttal. I will focus this morning on the following issue, whether the jury foreman's misconduct violated Appellants 6th and 14th Amendment rights to a fair and impartial jury. There are two prongs to this under the ADPA. One is that the state court unreasonably applied clearly established federal law in finding against Mr. McNeely. And the other is that the state court unreasonably determined the facts. Can you, in discussing that, separate what the jury foreman did while the jury was still in panel and what the jury foreman did afterwards? And I'm interested in first addressing afterwards. Is there anything that the jury foreman did after the jury was discharged that would warrant us to exercise habeas relief? The jury foreman published his blogs after the jury was discharged. We don't know if he actually wrote them during the trial and then waited to publish them afterwards. I'm just asking now, knowing what happened after the jury was discharged, is there anything that the foreman did after the jury was discharged that would warrant habeas relief? Yes. What is that? He made it clear to the world that Mr. McNeely didn't get a fair trial because he was in the jury room pushing for guilt and hastening the verdict. Well, but I want to separate two things here. We generally don't look inside of jury deliberations, absent an outside influence coming into the jury deliberations. Is there anything wrong with somebody describing jury deliberations after the jury is discharged? I think in this case it's an exception because usually when you have a hearing and you have jurors come back in and they tell the court under oath what happened in the jury room, we don't have that here. All we have are these statements made by the jury foreman. So I assume that everything he said happened. Yes. Let's assume that everything he described happened. Even on direct appeal, would that warrant us overturning the jury verdict? Yes. Why? Because it shows that he improperly influenced the deliberations. But is there any – I guess that's the same question I've been trying to ask several different ways. Is there anything wrong with that? In other words, we generally wouldn't look back inside a jury verdict or the deliberations in the room, even if one juror dominated the discussions or pushed others or pushed a compromised verdict. Why in this case would that warrant a new trial? I think because it shows that he wasn't violating his oath under the instructions that he was given and that he basically said from the beginning that he had made his mind up that Mr. McNeely was guilty. He was frustrated by the fact that everybody else thought he wasn't. And when one juror, his name was Brad, decided that he didn't want to convict on counts three and five, the juror actually said, I decided to shut him up, and I hastened the verdict along. So have you got any Federal case that suggests that if we know that a jury operated that way, we can overturn it? We can discover those facts and overturn the verdict? I think there are Federal cases that show that where there wasn't an adequate hearing in State court on the jury misconduct, that then you don't have to look at the State's ruling as a presumption of correctness anymore. Don't those cases deal with outside information coming into the jury or outside influences? Yes, most of them do. Is there any that doesn't? Not that I've found. The evidence rules, I think it's 606, tell us that we generally can't come up with evidence about what happened inside the jury room absent some very narrow exceptions. And so what I'm having difficulty with, with the description of what happened, is that it looks like a jury that may or may not be acting according to its duty or oath, and you read it more favorably to your client than I do. But even reading it your way, I'm having difficulty figuring out how we disturb a jury verdict just because inside the room they act badly. Well, I think the real problem here is that the voir dire process was thwarted by the jury. And that's why I was trying to separate what the foreman did from the voir dire process. Right. The attorneys didn't have an opportunity to explore his biases, whether they were known or unknown, because he lied during voir dire. How did he lie? Well, when they asked him his occupation, he said he was a project manager at a tech company. Wasn't he a project manager at the time they asked him that question? Yes. The judge didn't ask him, do you have any connection with lawyers or anybody, any jurors, have any prospective jurors ever attended law school? Right. Lawyers in the family? And then at the hearing. Right? Those questions weren't asked, right? Yes. He had just been working for this company for two months. He was still an attorney. He was still doing legal work for them. He was still doing legal work on his old cases. And he specifically said, look, I didn't say I was an attorney because I wanted to appear more neutral so I could get on the jury. Well, let's say he didn't say he was an attorney. So what? Well, I think. How does that become a challenge for cause, for example? I guess it wouldn't be, right? Well, it depends on the circumstances. I'm talking about the circumstances here. Right. He didn't say he was an attorney. Had he said he was an attorney. Yes. Then there were sure to be follow-up questions, what kind of an attorney, those kind of things. If he had answered those questions in the way that he answered them at the evidentiary hearing in the trial court, there's a good chance he would have been excluded for cause. What is that good chance? Tell me why. Tell me why somebody who answered the questions the way he did at the evidentiary hearing, which is that I am a licensed attorney. It wasn't my primary duty at the time, but I was still handling some immigration cases and other things. Why would that, why would a court err under AEDPA in failing to disqualify him for cause? I think if that were the case, if his answers were that straightforward, that you might be correct. Well, I'm using the answers from the evidentiary hearing. Right. But it was like pulling teeth trying to get those answers. It was very cagey. One of the questions was, are you listed on the State Bar website? He said, I have no idea. They said, well, you are an attorney, right? And he didn't answer the questions. He was being very literal in his answers, so much so that the court got frustrated and started questioning him directly. And it took the court probably three or four pages to pull out of him that he was still practicing law, even though he said he wasn't. Assuming all that, assuming whatever the court pulled out of him and what defense counsel pulled out of him, how does that information taken together amount to disqualification for cause? I think that's the whole point of Wadir, is you have the parties sitting there watching his demeanor. And as soon as the court says – Well, I would say somebody would have exercised a peremptory. Right. But we have a trial judge here finding that his answers were literally true and that he wouldn't have been disqualified for cause, don't we? Actually, the trial judge found that his answers were manipulative. Manipulative, but literally true. Literally true. His answers were manipulative and he wouldn't want this man on any person's jury is what he said. That's not a challenge for cause yet, is it? I wouldn't want him either, but I guess the question is whether I had to use a peremptory. I'm not sure I'd want him anyway. Yeah, I'm not sure I'd want a lawyer to begin with, so. Well, that's part of why that needs to come out during Wadir. Well, that's a peremptory in any event. Right. It would have only raised – it would have only risen to a challenge for cause if his answers were so bad, if he were equivocal about being fair or any of those things. But that very well may have happened when you look at his testimony at the evidentiary hearing. I guess my question is for Habeas. Don't we have to have more than sort of a supposition that maybe something for cause would have arisen at Wadir since we have an evidentiary hearing and there doesn't seem to be enough here for cause? Well, I think there's a problem on Habeas with the way the state court treated this issue. They conflated a number of different clearly established Federal law, if you will, when they decided this case. On one hand, they used Remmer v. United States by saying, look, we decide this. This is presumptually prejudicial. The presumption needs to be rebutted. And then they also used Smith v. Phillips by saying, we're going to give you an opportunity to go back and prove actual bias. And then they used McDonough by saying, okay, he was dishonest on review, I mean on Wadir, and now we have to see whether that dishonesty led to actual prejudice or whether it would have led to a challenge for cause. So they conflated all three of these cases. And so when defense counsel went back to do what the court told him or her to do, she was flummoxed. And she said that on remand. She said, what the court is telling me to do doesn't make any sense. How as a defendant am I able to rebut a presumption of prejudice if the only way to do that is to prove actual prejudice? And those are two very different things. So two years later, when she goes back to find these jurors, and understandably only a couple of them agree to talk, and then when she contacts them, they don't agree to talk at all. They can't be bothered. It's a long time ago. They don't remember. She has nothing other than this idea from the court of appeal that the presumption of prejudice still has to be rebutted. And it hasn't. The State hasn't presented any evidence either, contacted any of these jurors. So let's go back to that. It's a remand from the court of appeal that says there's a presumption of prejudice. It has to be rebutted. There's an evidentiary hearing, and the juror testifies. Why doesn't his testimony rebut the presumption of prejudice? He testified at the evidentiary hearing before it went to the court of appeal. I understand. But it comes back, and we have a record. And the trial judge finds that the presumption is rebutted, doesn't he? There was no additional evidence on remand, was there? No, there wasn't. And that's the other problem, is the trial judge and the court of appeal find that the presumption of prejudice is rebutted by the overwhelming evidence in the case, which is a prejudice argument, not a presumption of prejudice on juror misconduct argument. The only way to rebut a presumption of prejudice based on juror misconduct is to show that the misconduct didn't occur. For example, in a number of these cases, when they call a juror back and they say, were you dishonest on voir dire, and the juror says, oh, that was an honest mistake. I didn't realize that assault meant rape when I answered that question. And the court says, okay, well, that's rebutted then. The presumption is rebutted because you explained it. Well, they found it didn't occur, essentially. Pardon? They found it did not occur, essentially. They found that the misconduct occurred. He was cagey, and maybe they should have asked smarter questions. But he was doing what lawyers sometimes think they're supposed to do, wrongly probably, but still that's what he was doing. And the state court said, look, you know, it's just not there. I think the problem is this. It took them two rounds to do it. Well, it took them two rounds. I mean, if they punted the first time and said, well, let's send it back and see if we can't get some more information, we would sure like more information before we decide this case. Well, they didn't get any more information. So there they were. And based on what they had in front of them. And that's the problem with how this went down in the state court is had the jurors been disclosed initially, at the initial motion for new trial, defense counsel would more likely have been able to get them to testify and talk than two years later. That's just a guess. Come on. That's just a guess. Some jurors talk a lot. Some jurors won't talk at all. We've all been there and done that. Some of them just won't talk, period. But it's not a guess that memories fade and that people move on and they're not as interested two years later than they are when it happened.   That's just a guess. Do you want to say something to her? I do. Thank you. You have two minutes. May it please the Court. Deputy Attorney General Matt Mulford on behalf of the Warden. Mr. McNeely's argument in this case is that misconduct should always or nearly always be prejudicial and require reversal. That's not the law. There definitely was misconduct here. There were two chances, two hearings in state court to investigate the misconduct. What's your view of the misconduct? What was it? It was posting a blog discussion about the trial when there was still one day of trial to go. So he discussed the information. He put that out about what was happening in the case to the world when he should not have done it. Well, your worthy opponents seem to say that actually nothing of significance went out before the jury ruled that he held it in. As far as we can tell, one day of postings may have gone out before. That's the best guess. So he communicated about the jury deliberations. They attempted to communicate. Well, he put them out there for the world. Right. But there appears to be no response back at all. Right. The comment occurs after the jury has come back. But let's focus on that. That's misconduct, isn't it? Yes. We've always agreed that it has been. Presumptively prejudicial? Correct. How did you rebut the presumption? He came in and testified, and they believed what he had said. Well, I guess I'm having some difficulty with the procedural history of this in the California courts. The trial judge finds one thing, it goes up on appeal, and the court of appeals sends it back, and nothing additional happens. So why couldn't we – I mean, if the court of appeals thought something else was needed the first time through and nothing happens the second time through except for argument because no juror will testify, how is there more evidence to rebut the presumption the second time than there was the first time? Two different questions there, if I can try to track it a little bit. Yeah. Okay. The reversal in the first court of appeal opinion is not due to the finding of misconduct or what was happening. It was based on a slightly tangential procedure in the California law under the Code of Civil Procedure that allows defense attorneys to try to contact jurors to get things to say. To conduct some discovery. So that was the additional. So your reading of the first court of appeals disposition is that it was saying you deserve the ability to make a record before we rule out this. A better record, yes. A better record. On this record, you didn't rebut the presumption, but maybe you can do better if we let you. Oh, but they went quite that far. I think they – you made a factual finding based upon imperfect information that might exist with a better investigation. So they took one juror at his word, the juror that committed misconduct, and they didn't ask – they didn't have the chance, let me rephrase, they didn't have the chance to ask anybody else whether there were valid reasons to believe or accept or not rely on that. Let me ask you, if the judge had discovered on day two of trial or whatever day it was that the blog posting was made. The correction, the discovery didn't occur until after the verdict. No, I understand. But let's assume the judge had discovered. This is a hypothetical. Assume the judge had discovered on the day the blog – first blog posting was made. Yes. Would he – what should he have done? Should have had a hearing to see whether what person was doing what they were talking about. Couldn't he have just disqualified the juror and replaced him with an alternate? Well, I think the best – perhaps. Wouldn't that have been the best thing to do? Perhaps, but then you're – then – You still have to have a hearing to find out whether he's infected the juror. I don't want to go too far off in the realm of hypotheticals. But then there is a risk that this is the only holdout juror who might vote to acquit and that there are 11 other people sitting in the room who are ready to convict. And then the person they put in is, I don't know, a retired military. And all of a sudden it's – we're showing – you know, the judge is now influencing them by the removal of the juror. So I think a hearing – Bear with me for a second now. Because I think – if I was going to make the best argument for the other side, I think what I'd say is had the judge discovered this in time, the obvious remedy would have been to get rid of this juror. And since he didn't – since it wasn't discovered in time, that's – we ought to move back to that status quo ante. That's certainly plausible, and I'm not going to disagree with it. But at the same time, I don't think that was required based on the facts because we do have a juror here that was not biased and could be fair. And so that – what you're suggesting, that they could have stopped things and kicked the juror off, I think that would have been fine. But I don't think that would – that was necessarily required. Well, a mayor may not have been fine, but they'd better hold a hearing and better decide it was fine and better hope that when he then gets convicted, if he did get convicted still, that they don't have to fight that on appeal. You have the same problem, don't you? Well, yes. That's the hearing. We are on federal habeas. Should we be speculating on all the possibilities that might have happened? We know what happened. Well, we're speculating because there's no evidence despite two chances to put the evidence in, which means that he can't prevail. What's the last reason state court decision here? Which one are we reviewing? The second court of appeal opinion from – I can't remember the year. It's not the 2007 one. It's the later one. But you have to read it in conjunction with the first. Yes. Because it's the same record, the same judicial notice. Right. Yes. The issue was exhausted in a petition for review of the California Supreme Court, but they didn't say anything, so we go back one step to the opinion. And that's what the magistrate judge looked at. That's what the district court judge looked at. And everybody said, yes, misconduct, no prejudice. Why wasn't his failure to disclose his profession as a lawyer not misconduct? It wasn't asked. Well, I mean, he asked, what was the question? What's your occupation? And he gave his occupation, and it was correct. And there's a little discussion in there about whether the judge wanted the prosecutor to charge him with perjury, but it didn't go far enough because there wasn't a lie. You know, he was later disciplined by the bar, I think appropriately so. But it's not a lie. It's not subject. I mean, even if he had told the truth, it wouldn't have been a challenge. He was just being lawyerly-like. Gives us all a bad name, Your Honor. I apologize. But, yeah, everybody's looked at this case. Yes. If it was misconduct, I guess, my question is. Well, we've agreed that it is. Yeah. No, no. The failure to disclose. The failure to disclose. If it was misconduct, would he have been challengeable for cause had he been honest? No, because the fact of his attorney status. I think we've all learned over the years we don't get out of jury duty because we're lawyers. We just have to wait all day and not get chosen. But he wouldn't have been chosen, would he? The record's unclear, at least the record before this Court, but it's very highly likely and everybody assumed at trial that there was another attorney that had actually served. So it's not necessary. I think the fact, if the fact that he was being disingenuous in hiding. How do you know that? I mean, I'm. . . There's a reference in the RTEs and the blog postings is the big one where he talks about one of the. . . I'm not the only. Yeah. Yes. But I didn't go through the preliminary. Assume his blog postings are accurate about what happened in the jury room. Does that provide a basis for overturning the verdict? No. Under California law? Well, the federal rules of evidence are different than California rules of evidence and they are both trying to protect juror deliberations and sanctity and all the policy reasons that we have to deal with jurors that are not perfect people. But no, it's not a reason. I'm not aware of it. If there are no further questions. I don't have any. Thank you. Thank you. Two minutes. Thank you, Your Honor. I would invite this Court to take a look at Dyer v. Calderon out of the Ninth Circuit in 1998. I think the crux of the issue here is that this juror, whether he lied or materially omitted facts in voir dire, did so on purpose to secure a spot on the jury. He then positioned himself to be foreman and prejudged the case and pushed for hasty, guilty verdicts. Where's the evidence that he prejudged the case in the blog postings? There's plenty of evidence that he'd made up his mind at some point along the way, but does the prejudging have to occur before the closing or does it have to occur before he goes on the jury? He says that it seems from the blogs that as soon as he walked into the room, he basically said, okay, let's go. He pulled the jury, basically, and he was disappointed that they wanted to discuss the case instead of convicting straight off. But that's after the evidence came in, right? Yes. So I guess my question is, does his prejudging have to be before he joins the jury or is it before discussions occur? Can one arrive at a conclusion after the evidence without discussing it with others? Is that biased? I wanted to clarify. The second blog on March 5th delineates everything that happened during the evidence coming out, and in that blog is when he's saying that he believes the defendant is guilty before the deliberations began, which is in the March 6th blog. Anything further? Yes. I just want to ‑‑ Your last point. My last point is that it's obvious from the blogs that this juror was not unbiased and that he could not be fair. And Mr. McNeely is entitled to a fair and impartial jury. Okay. Thank you. Thank you very much, counsel. We appreciate arguments from both sides. The matter is submitted.
judges: Fernandez, Paez, Hurwitz